ALAN J. GORDEE, SBN 131907
agordee@gna-law.com
GORDEE, NOWICKI & BLAKENEY LLP
100 Spectrum Center Drive, Suite 870
Irvine, California 92618
Telephone: (949) 567-9923
Facsimile:  (949) 567-9928

JOSEPH D. SIBLEY IV (*pro hac vice
forthcoming*)
sibley@camarasibley.com
CAMARA & SIBLEY LLP
1108 Lavaca St. Suite 110263
Austin, TX 78701
Telephone: (713) 966-6789
Fax: (713) 583-1131

Attorneys for GIULIANI PARTNERS, LLC;
GIULIANI GROUP, LLC; GIULIANI
SECURITY & SAFETY, LLC; and ROBERT
J. COSTELLO

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HUNTER BIDEN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>RUDOLPH W. GIULIANI, an individual, GIULIANI PARTNERS, LLC, a Limited Liability Company; GIULIANI GROUP, LLC, a Limited Liability Company; GIULIANI SECURITY & SAFETY, LLC, a Limited Liability Company, ROBERT J. COSTELLO, an individual, and Does 1 through 20, inclusive;<br><br>Defendants. | Case No.: 2:23-cv-08032-HDV-KSx<br>Hon. Hernan D. Vera<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND CAL. CIV. PROC. CODE § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with the Declarations of Rudolph W. Giuliani and Robert J. Costello; Request for Judicial Notice; and Proposed Order]<br><br>Hearing Date: March 21, 2024<br>Hearing Time: 10:00 a.m.<br>Courtroom:      5B |

### NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 21, 2024 at 10:00 a.m., at U.S. Courthouse, 350 West 1ˢᵗ St., Los Angeles, California 90012, Courtroom 5B, 5ᵗʰ Floor, Defendants Giuliani Partners, LLC ("Giuliani Partners"), Giuliani Group, LLC ("Giuliani Group"), Giuliani Security & Safety, LLC ("Giuliani Security" and, together with Giuliani Partners and Giuliani Group, the "Giuliani Companies"), and Robert J. Costello ("Costello" and, collectively with the Giuliani Companies, the "Defendants") will and hereby do move respectfully for an order dismissing Plaintiff Robert Hunter Biden's ("Plaintiff" or "Biden") Original Complaint ("Complaint" [Doc. 1]) in its entirety pursuant to Fed. R. Civ. P. 12(b)(2) and (6) and California Civil Procedure Code § 425.16.

As discussed in greater detail in the attached Memorandum of Points and Authorities, there are multiple reasons why the Complaint should be dismissed. *First*, the case should be dismissed for lack of personal jurisdiction because none of the Defendants purposefully availed themselves of a California forum. *Second*, and subject to the jurisdictional challenge, the Complaint should be dismissed because the Complaint fails to plausibly allege all essential elements of the claims for relief pleaded therein with the requisite specificity required by Rule 9(b). *Finally*, subject to the Rule 12 Motions, because the Complaint arises from the Defendants' exercise of protected constitutional rights, it is subject to the California Anti-SLAPP statute and should be dismissed unless Plaintiff can adduce prima facie evidence of his claims such that it would overcome any substantive defenses.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Rudolph W. Giuliani and Robert J. Costello, the concurrently filed Request for Judicial Notice, and upon all pleadings, papers and records on file with the Court, and upon such further evidence and argument, either oral or written, as may be presented before or at the hearing on this Motion.

///

1    This Motion is made following the conference of counsel pursuant to L. R. 7-3 which

2  took place on January 9, 2024.

3

4                                          GORDEE, NOWICKI & BLAKENEY LLP

5

6  Dated: January 17, 2024          */s/ Alan J. Gordee*

7                                          Alan J. Gordee
                                           Attorneys for Defendants GIULIANI
8                                          PARTNERS, LLC; GIULIANI GROUP,
                                           LLC; GIULIANI SECURITY & SAFETY,
9                                          LLC; and ROBERT J. COSTELLO

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2  MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

3  I.    INTRODUCTION ....................................................................................................... 1

4  II.   FACTUAL ALLEGATIONS ..................................................................................... 2

5     A. Jurisdictional Allegations............................................................................................ 2

6     B. Pertinent Substantive Allegations .............................................................................. 3

7     C. Pertinent SLAPP Allegations..................................................................................... 5

8  III.  LEGAL ARGUMENT................................................................................................. 5

9     A. The Court Lacks Jurisdiction Over Defendants ......................................................... 5

10       1.   There Is No General Personal Jurisdiction Over The Defendants ........................ 6

11       2.   There Is No Specific Personal Jurisdiction Over The Defendants ....................... 7

12    B. The Complaint Fails To State A Claim On Which Relief Can Be Granted .................. 9

13       1.   The Giuliani Companies Must Be Dismissed As A Matter Of Law .................... 11

14       2.   The Complaint Fails To Otherwise Adequately Plead The Claims For Relief.... 14

15          a.   The CFAA claim is barred by limitations........................................................ 14

16          b.   All of the claims are too vague to pass Rule 12(b)(6) and Rule 9(b) scrutiny 15

17             i.    The CFAA claim .......................................................................................... 16

18             ii.   The CDAFA claim....................................................................................... 18

19             iii.  The unfair competition claim ..................................................................... 19

20    C. The Anti-SLAPP Statute Warrants Dismissal ........................................................... 19

21  IV.   CONCLUSION........................................................................................................... 23

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................. 9

*Banc of California, NA v. McDonnell*, No. SACV1801194AGADSX, 2018 WL 8693922, at *4 (C.D. Cal. Nov. 9, 2018) ............................................................. 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ........................................... 9

*Berryman v. Merit Property Management, Inc.*, 152 Cal.App.4th 1544, 1554, 62 Cal.Rptr.3d 177 (2007) ............................................................. 19

*Brand v. Menlove Dodge,* 796 F.2d 1070, 1073 (9th Cir.1986)............................... 6

*Brill Media Co., LLC v. TCW Group, Inc.*, 132 Cal. App. 4th 324, 339 (2005)................... 20

*Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)............................................................. 11, 13

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir.1993)......................... 5, 7

*Craigslist, Inc. v. Mesiab*, No. C 08-05064 CW (MEJ), 2009 WL 10710286, at *10 (N.D. Cal. Sept. 14, 2009) ............................................................. 10

*CytoSport, Inc. v. Vital Pharm., Inc.*, 894 F. Supp. 2d 1285, 1295 (E.D. Cal. 2012)........... 22

*D.C. v. R.R.*, 182 Cal. App. 4th 1190, 1226 (2010) ............................................... 21

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)................................. 8

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal.App.4th 777 (1996) ................... 21

*Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) ........................ 11

*E–Fab Inc., v. Accountants, Inc., Servs.*, 153 Cal.App.4th 1308, 1319, 64 Cal.Rptr.3d 9 (2007) ............................................................. 23

*Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383, 6 Cal.Rptr.2d 487, 826 P.2d 730 (1992) ............................................................. 19

*Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797, 807, 27 Cal. Rptr. 3d 661, 110 P.3d 914 (2005) ............................................................. 22, 23

*Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1331 (9th Cir. 1984)...................................... 6

*Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del. Ch. 1992)............................ 12

Gordee,
Nowicki &
Blakeney LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

*Gilbert v. Sykes*, 147 Cal. App. 4th 12, 23 (2007) ................................................................. 21

*Graham v. Bank of America*, N.A., 226 Cal. App. 4th 594, 610, 172 Cal.Rptr.3d 218 (2014) ................................................................................................................................. 19

*Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997) ......................................... 13

*Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) ................................................ 13

*Hall v. Clinton*, 285 F.3d 74, 83 (D.C. Cir. 2002) ............................................................ 13

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984) ............................................................................................................... 6

*HMS Cap., Inc. v. Laws. Title Co.*, 118 Cal.App.4th 204, 212 (2004) ............................... 22

*Impac Warehouse Lending Grp. v. Credit Suisse First Boston LLC*, 270 F. App'x 570, 572 (9th Cir. 2008) ................................................................................................................... 13

*In re Glick*, 568 B.R. 634, 662 (Bankr. N.D. Ill. 2017) .................................................... 12

*In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1045 (N.D. Cal. 2021) ................................................................................................................................. 10

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ...................................... 6

*Jewett v. Capital One Bank*, 113 Cal. App. 4th 805, 813 (2003) ...................................... 21

*King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011) ................................ 6

*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*, 37 Cal.App.4th 855, 865 (1995).. 19

*Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987) ............................................................ 7

*Leitner v. Sadhana Temple of New York, Inc.*, No. CV 13-07902 MMM (EX), 2014 WL 12588643, at *16 (C.D. Cal. Oct. 17, 2014) ............................................................... 12, 13

*Leon v. Murphy*, 988 F.2d 303, 310–11 (2d Cir.1993) ...................................................... 13

*Mintz v. Mark Bartelstein & Assocs. Inc.,* 906 F. Supp. 2d 1017, 1032 (C.D. Cal. 2012) ... 18

*Navellier v. Sletten* 29 Cal.4th 82, 88 (2002) ................................................................... 20

*Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ................................................... 11

*Norgart v. The Upjohn Co.*, 21 Cal.4th 383, 398, 87 Cal.Rptr.2d 453, 981 P.2d 79 (1999) 22

*Nugard, Inc. v. Uusi-Kertfula*, 159 Cal. App. 4th 1027, 1042 (2008) ................................ 21

*Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) ....................................................... 8

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

*Rosal v. First Fed. Bank of California,* 671 F. Supp.2d 1111, 1131 (N.D. Cal. 2009) ........ 23

*Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990) ............................................................. 6

*Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 677 (2010)....................................... 21

*Successor Agency to Former Emeryville Redevelopment Agency & City of Emeryville v. Swagelok Co.*, No. 3:17-CV-00308-WHO, 2023 WL 3805256, at *4 (N.D. Cal. June 1, 2023)........................................................................................................................................ 12

*Thayer v. Kabateck Brown Kellner LLP*, 207 Cal.App.4th 141, 159 (2012)........................ 22

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1174 (C.D. Cal. 2018) ................................................................................................................................................ 18

*Tidenberg v. Bidz.com, Inc.*, No. CV085553PSGFMOX, 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009) ........................................................................................................................ 19

*Trinity Risk Mgmt., LLC v. Simplified Lab. Staffing Sols., Inc.*, 59 Cal. App. 5th 995, 1004 (2021) ................................................................................................................................... 22

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir.2006)......................... 6

*U.S. ex rel Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999)......................................................................................................................................... 20

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001)............ 11

*United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988)..................... 12

*United States v. Nosal,* 676 F.3d 854, 859 (9th Cir. 2012) ........................................ 16, 17, 18

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ................................. 10

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) 9

*Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1170, 121 Cal.Rptr.2d 79 (2002) ................................................................................................................................... 19

*Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973)............................................. 10

*Welter v. Med. Pro. Mut. Ins. Co.*, No. 22-CV-11047-PBS, 2023 WL 2988627, at *11 (D. Mass. Feb. 23, 2023) ........................................................................................................... 17

*Wimbledon Fund, SPC v. Graybox, LLC*, No. CV15-6633-CAS(AJWX), 2016 WL 7444709, at *5 (C.D. Cal. Aug. 31, 2016) .......................................................................... 11

Gordee, Nowicki & Blakeney LLP

iv

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

**Statutes**

18 U.S.C. § 1030(a) ............................................................................................. 18

18 U.S.C. § 1030(e)(8) ........................................................................................ 14

18 U.S.C. § 1030(g) ............................................................................................ 14

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................... 1, 9, 11, 14, 19

Fed. R. Civ. P. 9(b) .............................................................. 1, 9, 10, 11, 14

Fed. R. Civ. P. 9(f) .............................................................................. 15

Fed. R. Civ. P. 9(g) ......................................................................... 17, 18

**Code of Civil Procedure**

Cal. Civ. Proc. Code § 425.16 .......................................... 2, 19, 20, 21, 23

**California Penal Code**

Cal. Penal Code § 502 ................................................................... 18, 22

**California Civil Code**

Cal. Civ. Code § 17208 ........................................................................ 22

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.   INTRODUCTION

3       Plaintiff filed this action in retaliation against Defendants[1] for allegedly publishing

4   materials from the files of the notorious "Biden Laptop." As widely reported by the press,

5   Plaintiff, a general-purpose public figure and son of President Biden, abandoned his laptop

6   computer at a Delaware repair shop. The shop owner turned the Biden Laptop over to the

7   FBI on or around October 2019 after discovering disturbing material. Soon after, media

8   outlets gained access to emails and documents found on the Biden Laptop, resulting in a

9   media storm of allegations against Plaintiff and his father regarding potential foreign

10  compromise. By April 2021, Plaintiff appeared in a TV interview discussing the Biden

11  Laptop files found in Delaware and distributed across the internet. Over two years after the

12  broad dissemination of the Biden Laptop files, Plaintiff filed this lawsuit against Defendants

13  based on a truly bizarre theory – that the "Biden Laptop" is not really Plaintiff's laptop, but

14  rather a laptop masquerading as Biden's laptop containing salacious files that were falsely

15  attributed to him intermixed with files supposedly stolen or hacked from him.  In this way,

16  Biden carefully toes the line between disclaiming responsibility for the worst of the Biden

17  Laptop, while manufacturing standing to sue Defendants by taking ownership of "some"

18  data that Defendants allegedly "hacked".  *See, e.g.,* Complaint at n. 1.

19       Biden's claims are frivolous.  But the Court need not reach the merits of the claims

20  because, as discussed below, there is no plausible allegation or evidence that the Defendants

21  ever subjected themselves to the jurisdiction of a California court. Second, even if

22  jurisdiction were proper, Biden's claims are so implausible as to fail the *Twombly*

23  plausibility threshold created by Rule 12(b)(6) as well as the applicable heightened pleading

24  standard under Rule 9(b), further warranting dismissal.  Finally, should the Court reach the

25  merits of those claims, Biden's allegations bring this case squarely within the California

26

27  ───────────────

28       [1] Plaintiff also sued Rudolph W. Giuliani ("Giuliani").  However, the action against Giuliani is stayed
    due his pending bankruptcy filing in the S.D.N.Y.  As a result, Giuliani is not participating in this Motion.

Anti-SLAPP statute, which requires Biden to adduce prima facie evidence of his claims and overcome Defendants' substantive defenses – a task far too tall for him to accomplish given that he admits he is "unaware" of how this fantastical chain of events could have happened. Accordingly, and as discussed in further detail below, the Court should dismiss for lack of personal jurisdiction or, in the alternative, dismiss for failure to state a claim, or, further in the alternative, dismiss with prejudice on the merits along with an award of attorneys' fees and sanctions pursuant to California Civil Procedure Code § 425.16.

## II.   FACTUAL ALLEGATIONS

Defendants will summarize Plaintiff's pertinent allegations in three categories: (1) insofar as they are jurisdictional; (2) insofar as they underlie the substantive claims for relief; and (3) insofar as they relate the arise from speech or conduct protected by the California Anti-SLAPP statute.

### A. Jurisdictional Allegations

Biden makes the following jurisdictional allegations against Defendants:

- "[A] substantial part of the events or omissions giving rise to the claim alleged in this complaint occurred" in California. Complaint at ¶ 9.
- "Plaintiff is informed and believes that Defendant Giuliani is a frequent visitor to the State of California for both personal and business reasons" and Giuliani "was and is the sole member" of the Giuliani Companies. Complaint at ¶¶ 11-14.
- The Giuliani Companies and Giuliani are a single business enterprise and "operate on a worldwide basis". Complaint at ¶ 15.
- Costello "acted as an agent of Defendant Giuliani and the Giuliani Companies."  Complaint at ¶ 16.

///
///
///
///

- "Plaintiff is informed and believes that Defendants intentionally directed their actions to California and have therefore subjected themselves to jurisdiction in California. Defendants have caused and are continuing to cause harm to Plaintiff with the knowledge and intent that such harm will occur in California."  Complaint at ¶ 17.
- Biden generally alleges that all Defendants acted in concert with one another and are, therefore, liable for the acts of one another.  Complaint at ¶ 19.

**B. Pertinent Substantive Allegations**

Biden makes the following pertinent substantive allegations against Defendants:

- "Although the precise timing and manner by which Defendants obtained Plaintiff's data remains unknown to Plaintiff," Defendants have "to some extent, accessed, tampered with, manipulated, altered, copied and damaged Plaintiff's data." Complaint at ¶ 20.
- John Paul Mac Isaac "sent via FedEx a copy of the data he claimed to have obtained from Plaintiff to Defendant Costello's personal residence in New York on an 'external drive.' […] Defendants repeatedly 'booted up' the drive; they repeatedly accessed Plaintiff's account to gain access to the drive; and they proceeded to tamper with, manipulate, alter, damage and create 'bootable copies' of Plaintiff's data over a period of many months, if not years." Complaint at ¶ 23.
- "The data Defendant Costello initially received from Mac Isaac was incomplete, was not forensically preserved, and that it had been altered and tampered with before Mac Isaac delivered it to Defendant Costello; Defendant Costello then engaged in forensically unsound hacking activities of his own that caused further alterations and additional damage to the data he had received. Discovery is needed to determine exactly what data of Plaintiff Defendants received, when they received it, and the extent to which it was

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

altered, manipulated and damaged both before and after receipt." Complaint at
n. 2.

- "By booting up and logging into an 'external drive' containing Plaintiff's data
  and using Plaintiff's username to gain access Plaintiff's data, Defendant
  Costello unlawfully accessed, tampered with and manipulated Plaintiff's data
  in violation of federal and state law. Plaintiff is informed and believes and
  thereon alleges that Defendants used similar means to unlawfully access
  Plaintiff's data many times over many months and that their illegal hacking
  activities are continuing to this day."  Complaint at ¶ 24.

- "After gaining unlawful access to the data that Mac Isaac claimed to have
  obtained from Plaintiff, Defendants spent months analyzing, tampering with,
  manipulating, and altering Plaintiff's data, as well as copying Plaintiff's data
  so that others could engage in these unlawful activities as well." Complaint at
  ¶ 25.

- "Plaintiff is informed and believes and thereon alleges for the past many
  months Defendant Giuliani has spent many hours hacking into and
  manipulating data that he claims to have been obtained from Plaintiff, making
  copies of the data for himself and others to access and analyze, and further
  altering, impairing and damaging the data through his unlawful hacking and
  manipulation." Complaint at ¶ 28.

- "Plaintiff is informed and believes and thereon alleges that at least some of the
  data that Defendants have accessed, tampered with, manipulated, damaged
  and copied without Plaintiff's authorization or consent originally was stored
  on Plaintiff's electronic devices or storage (including his iPhone and/or
  backed-up to Plaintiff's iCloud storage). On information and belief,
  Defendants gained unlawful access to Plaintiff's data by circumventing
  technical or code-based barriers that were designed and intended to prevent
  such access or to have others take those steps." Complaint at ¶ 36.

Gordee,
Nowicki &
Blakeney LLP

4

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

- "The precise nature and extent of Defendants' manipulation, tampering, alteration, damage and copying of Plaintiff's data, whether from their copy of a hard drive or from Plaintiff's encrypted 'iPhone backup' or from some other source, is unknown to Plaintiff due to Defendants' continuing refusal to return the data to Plaintiff so that it can be analyzed or inspected." Complaint at ¶ 37.

### C. Pertinent SLAPP Allegations

Biden makes the following pertinent allegations against Defendants insofar as it relates to the exercise of Defendants' protected Constitutional rights:

- Plaintiff mentions Defendants' "public statements" about the Biden Laptop. Complaint at ¶ 2.
- Plaintiff admits the lawsuit is filed in response to Defendants' "public statements and activities" regarding the Biden Laptop. Complaint at ¶ 21.
- Plaintiff admits that Defendants' public statements regarding the Biden Laptop are a basis for Plaintiff's evidence of damages.  Complaint at ¶ 24.
- Plaintiff admits Defendants' public statements, media interviews, and public appearances regarding the Biden Laptop are evidence of Defendants' liability. Complaint at ¶¶ 26-31 [2]

## III.   LEGAL ARGUMENT

### A. The Court Lacks Jurisdiction Over Defendants

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993) (citation omitted). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent

---

[2] In the media article Plaintiff relies on (*see* Complaint at n. 3, citing to https://nymag.com/intelligencer/article/hunter-biden-laptop-investigation.html), he misattributes statements regarding creating folders called "Salacious Pics" and the "Big Guy" to Costello.  Complaint at ¶ 27.  As is clear from this article, these statements were not made by Costello, but by an individual named "Vish Burra".  Costello's "cleaning up" characterized by Biden as "hacking" was, clearly from the context of Costello's statement "I got a wife around here" an attempt to keep disturbing content from the Biden Laptop from being seen by Costello's wife.  Biden's misleading and deceptive reliance on this article underscores the frivolity of his lawsuit.

permitted by the Due Process Clause of the United States Constitution." *Id.* at 1484 (citation omitted). As the United States Supreme Court has long held, the assertion of personal jurisdiction over a nonresident defendant will comport with constitutional due process only if the defendant has sufficient "minimum contacts" with the state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  There are two types of personal jurisdiction – general and specific.  As discussed below, Plaintiff has pleaded, nor can prove, either of these theories.

## 1. There Is No General Personal Jurisdiction Over The Defendants

For general jurisdiction to exist, a defendant must engage in "continuous and systematic general business contacts".  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984). This must rise to a level that "approximate physical presence" in the forum state, which is a "fairly high*"* standard. *See Brand v. Menlove Dodge,* 796 F.2d 1070, 1073 (9th Cir. 1986); *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1331 (9th Cir. 1984). The standard is met only by continuous corporate operations within a state [so substantial and of such a nature as to justify suit against a defendant on causes of action arising from dealings entirely distinct from those activities. *See King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011). To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, the Ninth Circuit considers their "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006).

Here, there is no non-frivolous argument that any of the Defendants are subject to general jurisdiction in California.  As detailed by the Declarations of Rudolph W. Giuliani

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

and Robert J. Costello: (1) the Defendants are all citizens of New York and/or Delaware for the Giuliani Companies headquarters; (2) the Defendants have hired no employees or independent contractors to conduct any business on behalf of any Defendant in the State of California and do not have any employees or independent contractors who reside or operate in the State of California; (3) the Defendants do not hold any professional licenses from the State of California, do not have offices in the State of California, and do not have a registered agent for service of process in California; (4) the Defendants do not own any property in the State of California have no assets located in the State of California; (5) the Defendants have never travelled to the State of California in any way relating to or concerning Hunter Biden, the Biden Laptop, or in any other way relating to or concerning the allegations made by the Plaintiff in the Complaint; and (6) all of Defendants' statements made concerning Hunter Biden, the Biden Laptop, or any other way relating to or concerning the allegations in the Complaint occurred in the State of New York. *See generally* Giuliani Decl.; Costello Decl.

Accordingly, without question, the Court cannot assert general jurisdiction over the Defendants.

### 2. There Is No Specific Personal Jurisdiction Over The Defendants

Even if a defendant has not had continuous and systematic contacts with the state sufficient to confer "general jurisdiction," a court may exercise "specific jurisdiction" when the following requirements are met:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Gordee,
Nowicki &
Blakeney LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

1   *Core–Vent Corp.*, 11 F.3d at 1485 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.

2   1987)) (quotation marks omitted).

3          Plaintiff cannot pass the first prong because the only theory that can possibly apply

4   here—since there is no allegation or suggestion that this case arises from some act or

5   transaction that occurred in California and, even if there were, this is refuted by the

6   Declarations as per above—is the "purposeful direction" theory.  But as detailed in the

7   Declarations, neither Giuliani nor Costello even knew that Biden—the son of a longstanding

8   Delaware senator—had domiciled in the State of California.  Giuliani Decl. at ¶ 6; Costello

9   Decl. at ¶ 6.  Knowledge of the alleged tortfeasor that he is directing his tortious conduct

10  specifically toward a specific forum state wherein the plaintiff is domiciled is **essential** to

11  this theory.  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (recognizing

12  requirement only satisfied when defendant knows that plaintiff is resident of state seeking to

13  assert jurisdiction). Biden has not even pleaded knowledge by the Defendants of his

14  California domicile.

15         In fact, Biden's own pleadings refer to Defendant's activities as "The Manhattan

16  Project" because the conduct complained of has occurred almost exclusively in New York.

17  Complaint at ¶¶ 32-33.  Even the new story cited to wherein Costello is alleged to have

18  made statements that Plaintiff uses in his Complaint supposedly accessing Plaintiff's files

19  was from Costello's home in Manhasset, New York.  Complaint at ¶ 24.  There are no

20  allegations whatsoever that connect any of Defendants' alleged conduct and the State of

21  California, other than that at some point in the last four years, Plaintiff decided to relocate to

22  California.  Under Plaintiff's theory of "have tort claim, will travel" he can create

23  jurisdiction wherever his celebrity lifestyle carries him.  This is not the law.  *Picot v.*

24  *Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (recognizing feeling injury alone in forum

25  state insufficient for jurisdiction).  Thus, Plaintiff also fails to satisfy the second prong cited

26  above, because his claim did not "arise out of or relate to the defendant's forum-related

27  activities" because there were no forum-related activities committed by any of the

28  Defendants.

Plaintiff's jurisdictional allegations are woefully inadequate and, in any event, cannot be amended to cure the defect because Defendants' Declarations conclusively negate any hope of jurisdiction being proper in California. The Court should dismiss for lack of personal jurisdiction.

**B. The Complaint Fails To State A Claim On Which Relief Can Be Granted**

Subject to and without waiving their challenge to jurisdiction, Plaintiff has failed to adequately plead a claim on which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations that, if accepted as true, would state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, plaintiffs must "nudge [ ] their claims across the line from conceivable to plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations ... when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (internal quotation and citation omitted).

As discussed below, the Complaint fails to satisfy the baseline Rule 12(b)(6) standard. However, Biden's claims are subject to an even higher standard. Each and every one of his causes of action are subject to the heightened pleading standard of Rule 9(b), which governs allegations alleging fraudulent conduct:

(1) the CFAA claim (First Claim for Relief) is based on allegations of fraudulent conduct (Complaint at ¶ 42, "Defendants have violated the CFAA, specifically section 1030(a)(4) of the CFAA, by knowingly and with intent to defraud…")). Such a claim is subject to Rule 9(b). *See Banc of California, NA v. McDonnell*, No. SACV1801194AGADSX, 2018 WL 8693922, at *4 (C.D. Cal. Nov. 9, 2018)

("Because BOC's CFAA claims are based on a unified course of fraudulent conduct, the claims are grounded in fraud and are subject to Rule 9(b)'s heightened pleading standard.");

(2) the CDAFA claim (Second Claim for Relief) is based on allegations of fraudulent conduct (Complaint at ¶ 46, "Defendants have violated California Penal Code § 502(c)(1) by knowingly accessing and without permission taking and using data from Plaintiff's devices or "cloud" storage to devise or execute a scheme to defraud or deceive…").  Such a claim is subject to Rule 9(b). *See Craigslist, Inc. v. Mesiab*, No. C 08-05064 CW (MEJ), 2009 WL 10710286, at *10 (N.D. Cal. Sept. 14, 2009), report and recommendation adopted, No. 08-05064 CW, 2009 WL 10710276 (N.D. Cal. Oct. 19, 2009) (applying Rule 9(b) to CDAFA claim); and

(3) the unfair competition claim (Third Claim for Relief) is based on allegations of the fraudulent conduct involved in the CFAA claim and the CCDAFA claim (Complaint at ¶¶ 54-58).  In such a case, Rule 9(b) also applies to the unfair competition claim.  *See In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1045 (N.D. Cal. 2021) (applying Rule 9(b) to unfair competition claims).

It is also well established that "Rule 9(b)'s particularity requirement applies to state-law causes of action" in addition to federal ones. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." *Id.* at 1103–04. A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on that conduct to prove a claim, as Biden does here. *Id.*

A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973). Thus, Rule 9(b)

1  requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct

2  charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct],

3  and why it is false.'" *Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637

4  F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d

5  993, 998 (9th Cir. 2010)). "Rule 9(b) may be relaxed to permit discovery in a limited class of

6  corporate fraud cases where the evidence of fraud is within a defendant's exclusive

7  possession." *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir.

8  2001). However, "this exception does not nullify Rule 9(b); a plaintiff who makes

9  allegations on information and belief must state the factual basis for the belief." *Neubronner*

10  *v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  This is not a corporate fraud case and surely

11  Biden is aware of what materials circulating from the "Biden Laptop" are his and which are

12  imposter materials.  As discussed below, Biden fails to satisfy Rule 12(b)(6)'s basic

13  requirements, much less Rule 9(b)'s heightened requirements.

14  **1. The Giuliani Companies Must Be Dismissed As A Matter Of Law**

15  As an initial matter, Biden makes no allegation whatsoever tying any specific actions

16  of Giuliani to the Giuliani Companies.  *See generally* Complaint.  Biden does not allege, for

17  example, that Giuliani was acting in a representative capacity for any of the Giuliani

18  Companies when he committed any of the actions complained of in the Complaint.  S*ee*

19  *generally* Complaint.  He further never alleges that Costello acted as agent for any of the

20  Giuliani Companies. *See generally Complaint*.  This leaves only one possible theory of

21  liability for the Giuliani Companies – either alter ego or conspiracy.  Biden makes

22  conclusory allegations as to alter ego and conspiracy in the Complaint, but these are

23  insufficient to plead plausible facts to give rise to liability on the part of the Giuliani

24  Companies.

25  In this Circuit, a plaintiff alleging alter ego must also satisfy the heightened pleading

26  requirements of Fed. R. Civ. P. 9(b).  *Wimbledon Fund, SPC v. Graybox, LLC*, No. CV15-

27  6633-CAS(AJWX), 2016 WL 7444709, at *5 (C.D. Cal. Aug. 31, 2016) (collecting multiple

28  9th Circuit cases).  California courts look to the law of the state of formation when assessing

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

veil piercing, because that state has a "substantial interest in determining whether to pierce the corporate veil of one of its" business entities. *Leitner v. Sadhana Temple of New York, Inc.*, No. CV 13-07902 MMM (EX), 2014 WL 12588643, at \*16 (C.D. Cal. Oct. 17, 2014). Therefore, Delaware law applies to the alter ego claims since the Giuliani Companies are incorporated in Delaware.  Complaint at ¶¶ 12-14; Giuliani Decl.  Here, Biden does not allege that any of the Giuliani Companies committed any wrongful conduct, but rather alleges that they are liable for the actions of Giuliani.  Complaint at ¶¶ 15, 17.  This type of piercing is called "reverse" piercing.  *Leitner*, 2014 WL 12588643 at \*15.  But Delaware— like California—has not recognized reverse piercing, and this is fatal to Biden's attempts at hanging liability on the Giuliani Companies for Giuliani's actions committed in his individual capacity.  *See In re Glick*, 568 B.R. 634, 662 (Bankr. N.D. Ill. 2017) ("Because Delaware law does not recognize reverse piercing, Gierum has no piercing remedy under Delaware law[.]").  Accordingly, Biden cannot attach liability to the Giuliani Companies through a reverse piercing theory based on Giuliani's actions.

However, even Delaware recognized reverse piercing, Biden's bare conclusory allegations fall far short of the mark to establish alter ego liability.  *See* Complaint at ¶ 15. Delaware law permits a court to traditionally pierce a corporate veil "where there is fraud or where [the corporation] is in fact a mere instrumentality or alter ego of its owner." *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del. Ch. 1992). Under Delaware law, courts look at "whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder." *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988).  A plaintiff must also allege some sort of intent to perpetuate at fraud with specificity.  *See Successor Agency to Former Emeryville Redevelopment Agency & City of Emeryville v. Swagelok Co.*, No. 3:17-CV-

00308-WHO, 2023 WL 3805256, at *4 (N.D. Cal. June 1, 2023) (observing that California and Delaware alter ego law is the same).

The only allegation Biden makes that comes close to approaching a relevant accusation for alter ego liability is that "upon information and belief, the Giuliani Companies also have intermingled bank accounts."  Complaint at 15.  Biden fails to disclose the "'who, what, when, where and how" of this singular allegation or the basis of the supposed "information and belief".  *See Cafasso*, 637 F.3d at 1055.  This falls far short of the heightened pleading requirements imposed by Rule 9(b).  Accordingly, the Court should dismiss all claims against the Giuliani Companies on the basis of alter ego.  *See Leitner*, 2014 WL 12588643 at *16-17 (holding that conclusory allegations of "commingling assets" were too conclusory to survive a motion to dismiss).

This leaves only a conspiracy claim – but Biden does not include a cause of action for civil conspiracy in his Complaint.  *See generally* Complaint.  To plausibly allege civil conspiracy, plaintiffs must allege Defendants had "an agreement to take part in an unlawful action or a lawful action in an unlawful manner."  *Hall v. Clinton*, 285 F.3d 74, 83 (D.C. Cir. 2002).  The elements of civil conspiracy consist of: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme.  *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).  A plaintiff must allege a "meeting of the minds" as to some improper purpose, as it is an essential element of a conspiracy claim.  *See Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997).  A plaintiff must also allege a causal connection between the overt act(s) taken in furtherance of the conspiracy and the alleged injury.  *See id. at 321*.  Moreover, the plaintiff must allege these elements with particularity.  *See Leon v. Murphy*, 988 F.2d 303, 310–11 (2d Cir. 1993).  Conclusory allegations of conspiracy are insufficient under notice pleading, much less the heightened pleading requirements of Rule 9(b), which applies to conspiracy claims

involving allegations of fraud, as is the case here.  *Impac Warehouse Lending Grp. v. Credit Suisse First Boston LLC*, 270 F. App'x 570, 572 (9th Cir. 2008).

Biden has one boilerplate conspiracy allegation in his Complaint, that makes general conclusory allegations regarding the Defendants' involvement in a conspiracy.  *See* Complaint at ¶ 19.  This allegation is woefully inadequate under either Rule 12(b)(6) or Rule 9(b) to attach conspiracy liability to any Defendant.  Therefore, the Giuliani Companies must be dismissed as there is no plausible theory of liability that can attach to them.

### 2. The Complaint Fails To Otherwise Adequately Plead The Claims For Relief

Regardless of which Defendant the Complaint is referring to, it completely fails to plead an adequate set of facts to put Defendants on notice of what they have supposedly done.  According to Biden, he is oblivious to what information Defendants have of his or how exactly they got it.  *See, e.g.,* Complaint at ¶ 37.  Such a pleading, on its face, cannot possibly satisfy the heightened pleading requirements of Rule 9(b) or general requirements of Rule 12(b)(6).  For all of the reasons discussed below, the Court should dismiss Biden's Complaint for failure to adequately plead a claim for which relief can be granted.

### a. The CFAA claim is barred by limitations

Under the CFAA, the statute of limitations begins to run as of "the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g). The term "damage," is specially defined in the CFAA and "means any impairment to the integrity or availability of data, a program, a system, or information[.]" 18 U.S.C. § 1030(e)(8). These are the types of damages that Biden claims Defendants caused: (1) "total annihilation" of Biden's "digital privacy"; (2) a failure to return Biden's data[3]; and (3) that the 79-year old former mayor of New York inexplicably turned into tech-savvy "hacker" Giuliani spends

---

[3] What "data" this is, we aren't told.  As discussed below Biden never tells us in the Complaint what data is his and what data is not his (e.g., evidence of pornography, drug use, emails and other information used by the DOJ to indict him).

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

Gordee, Nowicki & Blakeney LLP

"hours hacking into and manipulating data that he claims to have been obtained from Plaintiff, making copies of the data for himself and others to access and analyze, and further altering, impairing and damaging the data through his unlawful hacking and manipulation" and carries around a copy of the hard drive on his person "so that he can continuously access, tamper with and manipulate the data whenever and wherever he desires" for apparent recreational purposes.  Complaint at ¶¶ 1, 4, 28-31.

Plaintiff was well aware of his "damages" well over two years from the date of filing of this lawsuit, which was on September 26, 2023.  Doc. 1.  Plaintiff's own news story he cites to details the long "sordid" history of the Biden Laptop story, which made international headlines in September of 2020 by various news outlets and dates back to April 2019 when the Biden Laptop was alleged to have been dropped at a Delaware repair shop.  Complaint at n. 3 (citing https://nymag.com/intelligencer/article/hunter-biden-laptop-investigation.html).  Moreover, As demonstrated by the Request for Judicial Notice filed herewith, Biden himself went on the talk show circuit in April 2021 to discuss his book and was clearly aware of the salacious allegations pertaining to the Laptop that he now sues over, calling it a "red herring", disclaiming knowledge of whether it was his, and stating he was "within his rights to question anything that came from the desk of Rudy Giuliani".  *See* RJC (citing https://youtu.be/ia219GD0Vok?si=vYIq8CMZxbBYVrRP (beginning at 10:24 and ending at 11:10)).  There is no question that, well before two years—and likely much longer—that Biden knew of the "damages" of supposed compromising and dissemination of his data was taking place.  Biden would have been "within his rights" to sue in April 2021, but instead he feigned ignorance, and it was not until the Laptop data was authenticated as his that his ignorance evolved into retaliatory litigation.  This claim is time barred.

## b. All of the claims are too vague to pass Rule 12(b)(6) and Rule 9(b) scrutiny

Biden's Complaint is far too vague to survive dismissal.  By way of example, Biden's Complaint contains multiple glaring omissions that are essential to adequately plead his claims for relief (*see* Fed. R. Civ. P. 9(f)):

- Biden fails to plead *which* hard drive, laptop, or other electronic device or storage mechanism that belonged to him was supposedly hacked.  Was there ever a laptop containing the information he now complains over?  A desk top?  A phone?  A tablet?  External hard drive?  Cloud storage?  How can Biden know anything was hacked if he doesn't know what device on which he stored the data that Defendants now allegedly wrongfully possess.

- Biden fails to plead *when* the alleged hacking occurred.  What year was it?  Did he ever provide a laptop to a repair shop in Delaware?  Was there ever any event where he realized his electronic data was compromised?  What measures were in place to protect the data on whatever device(s) supposedly were hacked?

- Biden fails to plead *what* of that data that is circulating in the public domain is his data and what information is not his data.  Biden claims that some, but not all of the data Defendants allegedly possess is his.  What data is it?  Surely, he must know if he brought this lawsuit.  But there is not a single piece of data that Biden identifies in the Complaint as: (1) belonging to him; (2) in the possession of the Defendants; that was (3) hacked/stolen/wrongfully taken from a computer owned by Biden.

As a result, Biden cannot satisfy his Rule 9(b) and Rule 12(b)(6) pleading requirements under any of his claims.  He has not detailed with specificity the material facts underlying his causes of action based on Defendants' supposed fraudulent scheme and/or conspiracy to commit the wrongful conduct complained of.  In addition, as discussed in greater detail below, Biden's claims are otherwise fatally defective as follows:

### i.   The CFAA claim

As for the CFAA claim, Biden is required to plead specific plausible facts that Defendants hacked into *his* computer without authorization or beyond the scope of authorization.  *See United States v. Nosal,* 676 F.3d 854, 859 (9th Cir. 2012).  Given that Biden pleads he never authorized Defendants to access his computer, this would put

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

Defendants in the category of "outside hacker". *See id.* at 859 ("[W]ithout authorization" would apply to outside hackers (individuals who have no authorized access to the computer at all) and "exceeds authorized access" would apply to inside hackers (individuals whose initial access to a computer is authorized but who access unauthorized information or files)."); Complaint at ¶35. But Biden has pleaded himself out of this claim by admitting repeatedly that Defendants received a "copy" of a supposedly hacked hard drive from a Delaware shop owner and that they received the data in an already "hacked", "manipulated", "altered", and "damaged" form. *See, e.g.,* Complaint at ¶ 2.

This is fatal to Biden's claims because he is essentially adopting the position that the Ninth Circuit rejected in *Nosal,* which is that a party may be liable under the CFAA for possessing and/or using data that was hacked by a third party. In rejecting this argument, the *Nosal* court recognized that Biden's "construction of the statute would expand its scope far beyond computer hacking to criminalize any unauthorized use of information obtained from a computer." *Nosal*, 676 F.3d at 859. Because Biden has not and cannot allege that any of the Defendants accessed his computer without authorization (hacked his computer), as opposed to benefiting from information obtained by someone who did violate the CFAA (the mysterious and anonymous "hacker" Biden has yet to identify), his CFAA must be dismissed.

Even if his vague allegations mustered liability, Biden has not adequately pleaded his damages under the CFAA. In one conclusory sentence in the Complaint, he claims "direct costs" incurred in "investigating and responding" to Defendants' conduct. Complaint at ¶ 43. These "special damages" must be pleaded with particularity. Fed. R. Civ. P. 9(g). Conclusory statements are insufficient. *See Welter v. Med. Pro. Mut. Ins. Co.*, No. 22-CV-11047-PBS, 2023 WL 2988627, at *11 (D. Mass. Feb. 23, 2023) (dismissing CFAA claim where "the [complaint] contains no allegation that the purported CFAA violation 1) affected or impaired [plaintiff's] ability to use any computer; 2) required [plaintiff] to engage in any computer forensics or computer repair; or 3) forced him to incur costs due to an inoperative

computer system.") (citations omitted).  Therefore, for this additional reason, the CFAA must also be dismissed.[4]

### ii.  The CDAFA claim

The CDAFA is California's state-law analogue to the CFAA.  *See Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1174 (C.D. Cal. 2018).  The statutory language and defined terms are nearly identical.  *Compare* Cal. Penal Code § 502(c) (1)–(13) *with* 18 U.S.C. § 1030(a). Just like the CFAA, the CDAFA requires that Defendants have engaged in unauthorized access (hacking) of a computer (*see generally* Cal. Penal Code § 502(c)(1)– (13)) and just like with the CFAA claim Biden has not and cannot plead such facts.  There is no authority holding that the CDAFA is—unlike its progenerating federal counterpart the CFAA—should be "transform[ed] […] from an anti-hacking statute into an expansive misappropriation statute." *Nosal,* 676 F.3d at 857.  Simply, put the CDAFA and the CFAA do not create vicarious liability for receiving "hacked" data.  Accordingly, Biden's CDAFA fails for the same reasons as argued above in reference to the CFAA.

Finally, Biden, like with the CFAA, fails to adequately plead damages arising from the CDAFA claim.  Biden simply pleads that "Defendants have caused damage to Plaintiff in an amount to be proven at trial."  Complaint at ¶ 50.  Biden, however, must plead with greater specificity the details of his alleged damages resulting from Defendants' conduct. *See* Fed. R. Civ. P. (9)(g).  Biden has made nothing more than a conclusory allegation of damages and, therefore, cannot establish has a right to even assert a civil claim under the CDAFA.  *See Mintz v. Mark Bartelstein & Assocs. Inc.,* 906 F. Supp. 2d 1017, 1032 (C.D. Cal. 2012) (denying motion to dismiss CDAFA claim where plaintiff specifically detailed damages allegedly suffered from CDAFA violation).  Accordingly, the CDAFA claim should be dismissed.

---

[4] And under this same rationale, how can Defendants possibly be subject to the CDAFA—a California criminal statute—for actions that occurred entirely on the East Coast, simply because Biden—at a date unclear—moved to California before filing this suit?  The reasons why the unfair competition law cannot apply to Defendants underscore the jurisdictional problem with Biden's Complaint.

### iii. The unfair competition claim

As pled, the unfair competition claim is dependent on the success of the CFAA and the CDAFA claims.  Complaint at ¶¶ 54-58.  Therefore, because those claims should be dismissed as per above, so should the unfair competition claim since this cause of action is depending on a "'violation of another law [as] a predicate for stating a cause of action under the UCL's unlawful prong.'" *Graham v. Bank of America*, N.A., 226 Cal. App. 4th 594, 610 (2014) (quoting *Berryman v. Merit Property Management, Inc.*, 152 Cal. App .4th 1544, 1554 (2007)). "The unfair competition law thus creates an independent action when a business practice violates some other law." *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1170 (2002) (citing *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992)).

However, even were this not true, this Court has previously held that California unfair competition law does not apply to non-California residents for conduct occurring outside of California.  *Tidenberg v. Bidz.com, Inc.*, No. CV085553PSGFMOX, 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009) ("The critical issues here are whether the injury occurred in California and whether the conduct of Defendants occurred in California. **If neither of these questions can be answered in the affirmative, then Plaintiff will be unable to avail herself of these laws**.") (emphasis added).  Accordingly, even were the CFAA and CDAFA claims survived—which they do not—this unfair competition claim cannot.

### C. The Anti-SLAPP Statute Warrants Dismissal

Subject to their jurisdictional challenge and their challenge under Rule 12(b)(6), Defendants further contend that Civil Procedure Code § 425.16 (the Anti-SLAPP statute) applies to Biden's state law claims.  Section 425.16 is a procedural remedy designed to quickly dispose of lawsuits that infringe upon the valid exercise of constitutional rights. *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*, 37 Cal. App. 4th 855, 865 (1995). Section 425.16(b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United

States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

The statute further clarifies that an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" or "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *Id.* at 425.16(e). The Anti-SLAPP statute applies with equal vigor in federal court as to any and all state and common law claims. *See U.S. ex rel Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999) (upholding the application of the anti-SLAPP statute in federal court since, inter alia, "the twin purposes of the Erie rule— "discouragement of forum-shopping and avoidance of inequitable administration of the law"—favor application of California's Anti–SLAPP statute in federal cases.).

In determining whether to grant an anti-SLAPP motion, courts engage in a two-step process. First, the court decides whether the moving party has made a threshold showing that the challenged cause of action is one arising from protected activity, i.e., whether the activity fits one of the four categories enumerated at section 425.16(e). *Navellier v. Sletten* 29 Cal. 4th 82, 88 (2002). In determining whether Defendants have sustained their initial burden, the Court should consider the pleadings, declarations, and matters that may be judicially noticed. *Brill Media Co., LLC v. TCW Group, Inc.*, 132 Cal. App. 4th 324, 339 (2005). Here, there is no question—by Biden's own admissions in his Complaint (*see, e.g.,* ¶¶ 2, 21, 24, 26-31)—that this entire lawsuit arises from, is based on, and in response to Defendants public statements regarding Biden and the Biden Laptop. A statement in a public forum is connected to an issue of public interest "if the subject of the activity underlying the claim (1) was a person or entity in the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involved a topic of widespread,

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

Gordee,
Nowicki &
Blakeney LLP

1  public interest." See *D.C. v. R.R.*, 182 Cal. App. 4th 1190, 1226 (2010) (citing *Jewett v.*

2  *Capital One Bank*, 113 Cal. App. 4th 805, 813 (2003)).  At minimum, Defendants

3  statements referenced in the Complaint are on a matter of public concern – whether a sitting

4  president's son (a public figure) was involved in illicit activities evidenced by his

5  abandoned hard drive.  Finally, the allegations that Defendants invited others to allegedly

6  examine Biden's data (the "Manhattan Project" hacking gatherings) and disseminating the

7  data to news outlets and other third parties is clearly conduct in furtherance of their

8  protected rights of free speech and association.

9          Courts must construe the public issue/public interest' requirement of the anti-SLAPP

10 statute broadly.  *See Gilbert v. Sykes*, 147 Cal. App. 4th 12, 23 (2007) (citation omitted).

11 And, as courts have held, conduct is made "in connection with a public issue or an issue of

12 public interest," as required by Cal. Civ. Proc. Code § 425.16(e)(4), "if the conduct

13 concerns a topic of widespread public interest and contributes in some manner to a public

14 discussion of the topic." *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 677 (2010).

15 Indeed, as one court has succinctly put it, an issue of public interest is "any issue in which

16 the public is interested." *Nugard, Inc. v. Uusi-Kertfula*, 159 Cal. App. 4th 1027, 1042

17 (2008) (emphasis in original).  The Anti-SLAPP statute, therefore, unquestionably applies

18 to both state law causes of action that Biden has pleaded as they are all based on these

19 "SLAPP" allegations regarding Defendants' public speech to news agencies, speech on a

20 matter of interest to the public, and conduct in furtherance of these rights.  *See* Complaint at

21 ¶¶ 2, 21, 24, 26-31.

22         Once the moving party establishes that the lawsuit arises from protected activity, the

23 burden shifts to plaintiffs to show through competent evidence a probability that they will

24 succeed on their claim.  *See generally Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47

25 Cal. App. 4th 777 (1996); Cal. Civ. Proc. Code § 425.16(a).  Therefore, Biden must

26 demonstrate through competent evidence a probability that he will succeed on his state law

27 claims.  *Id.*  That probability of prevailing includes a "prima facie factual showing"

28 sufficient to demonstrate that Biden could obtain a judgment on his claim.  *See Trinity Risk*

*Mgmt., LLC v. Simplified Lab. Staffing Sols., Inc.*, 59 Cal. App. 5th 995, 1004 (2021), review denied (Apr. 21, 2021) (collecting cases)).  Thus, Biden has the burden of establishing—not merely alleging—that each element of his state law claims (the CDAFA and unfair competition claims) is legally sufficient and factually substantiated.  *Id.*  For the reasons detailed above in the argument section regarding failure to state a claim on which relief can be granted, Biden's claims are legally insufficient and should be dismissed under the Anti-SLAPP statute as a matter of law.

However, if they are not barred as a matter of law, this motion becomes an evidentiary one and to survive it Biden "must produce evidence that would be admissible at trial" to survive dismissal. *HMS Cap., Inc. v. Laws. Title Co.*, 118 Cal. App. 4th 204, 212 (2004).  Biden, therefore, must now make a prima facie evidentiary showing of facts that would, if proved at trial, support a judgment in his favor on all of his claims.  *Thayer v. Kabateck Brown Kellner LLP*, 207 Cal. App. 4th 141, 159 (2012). Biden will be required to adduce evidence proving each and every element of his state law claims for relief including, but not limited to, causation and damages, as well as the answers to all of the "who", "what", "how", "when" questions outlined above in the argument section regarding failure to state a claim on which relief can be granted.

In addition, "[t]o defeat an anti-SLAPP motion, [a plaintiff] must overcome any substantive defenses Plaintiff Creek must overcome the statute of limitations as to all the SLAPP Claims. *Trinity Risk Mgmt.*, 59 Cal. App. 5th at 1006.  For the CDAFA claim, the statute of limitation is three years.  *See* Cal. Pen. Code § 502(e)(5). The statute of limitations for California unfair competition actions is four years. *See CytoSport, Inc. v. Vital Pharm., Inc.*, 894 F. Supp. 2d 1285, 1295 (E.D. Cal. 2012); Cal. Civ. Code § 17208. In California, a party is deemed to have discovered the fraud when it "'has reason at least to suspect the factual basis for its elements.'" *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (quoting *Norgart v. The Upjohn Co.*, 21 Cal. 4th 383, 398 (1999)). This rule "delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Id.* Accordingly, plaintiffs "are charged with presumptive knowledge of an injury if

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

1  they have information of circumstances to put them on inquiry or if they have the

2  opportunity to obtain knowledge from sources open to their investigation." *Rosal v. First*

3  *Fed. Bank of California,* 671 F. Supp. 2d 1111, 1131 (N.D. Cal. 2009) (citing *Fox,* 35 Cal.

4  4th at 897–98). A party relying on the delayed discovery rule must plead facts showing the

5  time and manner of the discovery and the inability to have made earlier discovery despite

6  reasonable diligence; conclusory allegations are not sufficient. *E–Fab Inc., v. Accountants,*

7  *Inc., Servs.*, 153 Cal. App. 4th 1308 (2007).  Accordingly, even if Biden adduces prima

8  facie evidence of his claims, he must also provide a declaration in response to this Motion

9  detailing how and when he became aware of the factual basis of his claims, given that,

10  according to his own sources, the causal chain of events began in April of 2019, which is

11  over four years before he filed this suit.  Otherwise, his claims should be dismissed on

12  limitations grounds.

13       Under Civil Procedure Code § 425.16(c)(1), "a prevailing defendant on a special

14  motion to strike shall be entitled to recover his or her attorney's fees and costs."  Thus,

15  Defendants are entitled to an award of attorneys' fees.  Defendants request that this Court

16  dismiss the SLAPP Claims and conduct further proceedings to award attorneys' fees and

17  sanctions.

18  **IV.    CONCLUSION**

19       For all of these reasons, the Court should dismiss for lack of personal jurisdiction, or,

20  in the alternative, the Court should dismiss for failure to state a claim or, further in the

21  alternative, the Court should dismiss with prejudice under the Anti-SLAPP statute and

22  conduct further proceedings to award Defendants their attorneys' fees and costs.

23                                          GORDEE, NOWICKI & BLAKENEY LLP

24

25   Dated: January 17, 2024                 */s/ Alan J. Gordee*

26                                               Alan J. Gordee
                                           Attorneys for Defendants; GIULIANI
27                                         PARTNERS, LLC; GIULIANI GROUP,
                                           LLC; GIULIANI SECURITY & SAFETY,
28                                         LLC; and ROBERT J. COSTELLO

1

**CERTIFICATE OF SERVICE**

2          The undersigned hereby certifies that all counsel of record who have consented to

3    electronic service were served with a copy of **DEFENDANTS' NOTICE OF MOTION**

4    **AND MOTION TO DISMISS COMPLAINT** via the Central District of California

5    CM/ECF system.

6

7     Dated: January 17, 2024                    */s/ Alan J. Gordee*

8                                                                      Alan J. Gordee

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordee,
Nowicki &
Blakeney LLP